UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Western Division

99 AUG 11 AM 11: 39
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNIONS AND EMPLOYERS HEALTH AND WELFARE FUND, Plaintiff; | ) ) ) ) ) |
| -vs.- | ) ) No. CV-97-P-3351-W |
| PHILIP MORRIS, INC., et. al, Defendants. | ) ) ) |

ENTERED
AUG 11 1999

## OPINION

The defendants' Motion to Dismiss or for Summary Judgment was taken under submission in May 1998. For the reasons stated herein, the motion is due to be granted. In April 1999, the plaintiffs filed a Motion for Leave to File Amendment to Complaint, which was heard at oral argument at the court's June 4, 1999 motion docket. This motion is due to be denied.

### Facts[1]

The plaintiff, United Food and Commercial Workers Unions and Employers Health and Welfare Fund ("UFCW") is a multi-employer trust fund seeking to recover health care costs it expended and losses it incurred in providing health care and other benefits to plan participants for the treatment of tobacco-related illnesses. Defendants are tobacco companies, holding companies, lobbying arms, public relations firms, and distributors of tobacco products.

The plaintiff's ninety-page complaint alleges that the defendants conspired to withhold essential information from the general public regarding the health effects of cigarettes and other

---

[1] The recitation of facts is based upon the presented materials viewed in the light most favorable to the plaintiff.

tobacco products. The plaintiff provides a litany of public statements made by the defendants denying that smoking causes cancer and respiratory disease, claiming that filtered cigarettes are safer than non-filtered, and promising that the defendants themselves were researching the effects of tobacco on health and providing the public with honest and current information. The plaintiff claims that the defendants made these statements knowing they were false and intending to induce the public to increase its consumption of tobacco products.

The plaintiff also alleges that the defendants suppressed research harmful to the tobacco industry and marketed its products to vulnerable populations of the public.[2] The plaintiff claims that the defendants conspired together to prevent the manufacture and distribution of safer products, the development of which would indict the industry for the harmfulness of products already on the market. The plaintiff also alleges that the defendants knew that the nicotine contained in their products was highly addictive and purposefully manipulated those levels of nicotine in order to addict consumers.

The plaintiff brought this action in state court on November 13, 1997, alleging claims of fraud and misrepresentation, violation of Alabama antitrust laws, conspiracy, breach of special duty, restitution, and unjust enrichment. The plaintiff also sought class certification, which was conditionally granted by the state court. The case was removed to this court on December 30, 1997.

After a hearing on May 15, 1998, the court denied the plaintiff's motion to remand and gave the parties additional time to submit briefs on the issue of statutes of limitation. Additionally, the court noted in its May 18, 1998 order the plaintiff's representation that it would not pursue its

---

[2]The plaintiff's complaint alleges that defendants' marketing practices targeted blue-collar workers, African-Americans, minors, and low-income women. Pl. Compl. at 68-74.

2

antitrust, restitution, and unjust enrichment claims. Consequently, the remaining claims to which the pending motion to dismiss or for summary judgment[3] applies are for fraud, breach of special duty, and conspiracy. On April 15, 1999, the plaintiffs filed a motion to amend the complaint to include a claim for intentional interference with contractual relationships.

## Analysis

### I. Plaintiffs' Motion for Leave to File Amendment to Complaint

Oral argument was heard on the plaintiffs' Motion for Leave to File Amendment to Complaint at the court's June 4, 1999 motion docket. The plaintiff has requested that the complaint be amended to set forth an additional legal claim for intentional interference with contractual relationships. The plaintiff admits that the legal theory it propounds has not been explicitly adopted by the Alabama courts, and asks this court to craft Alabama common law.

Plaintiff argues that public policy would be best served by creating a rule under which health care insurers can recover their costs from defendants whose products have allegedly sickened the insurers' beneficiaries. The plaintiff alleges that the defendants' actions lead to higher performance costs under its health care contracts with beneficiaries who used tobacco products. For support, the plaintiff cites the Restatement (Second) of Torts § 766A. The Restatement recognizes a tort of interference with contractual relations where improper interference by a third-party raises the costs of performance for one party to the contract:

One who intentionally and improperly interferes with the performance of a contract between

---

[3] At the time of the May 15, 1998 conference, the only materials submitted in support of the defendants' motion were certain plan documents. Since the conference, the defendants have also submitted an affidavit and accompanying ERISA documents concerning the plaintiff as well as an affidavit and documents relating to the defendants' statute of limitations argument.

3

another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him. Restatement (Second) of Torts § 766A (1979).

The plaintiff wishes to amend the complaint to allege that the defendants interfered with the plaintiff's contractual obligations by "improperly and intentionally increas[ing] the cost to plaintiff and other members of the class of carrying out [those] obligations." Plaintiff's Amendment to Complaint, filed April 15, 1999. The UFCW contends that because the defendants sold harmful tobacco products to the UFCW's beneficiaries, the defendants "interfered" with the health coverage contracts between the beneficiaries and their insurers by raising the medical costs the insurers were required to pay. In proposing the amendment, the plaintiff requests that this court develop Alabama common law to recognize a new legal theory to allow an insurer to recover for the payments to beneficiaries whose injuries were caused by a third party.

Contrary to the plaintiff's assertions, Alabama caselaw has long recognized a tort of intentional interference with business or contractual relations, and Alabama courts have required these claims to satisfy five elements: "(1) existence of a contract or business relation; (2) defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; (4) absence of justification for the defendant's interference; and (5) damage to the plaintiff as a result of defendant's interference." Caine v. American Life Assurance Corp., 554 So.2d 962, 964 (Ala. 1989); see also Gilbert v. Congress Life Insurance Co., 646 So.2d 592 (Ala. 1994).

The plaintiff seems to ask this court to recognize the Restatement version in lieu of, or in addition to, the cause of action recognized by the Alabama Supreme Court in order to permit this suit to proceed. The plaintiff argues that the theory that this court should adopt need not require the

4

defendants to have known of the specific contracts between the UFCW and its beneficiaries, or to have specifically intended to interfere with those contracts. The plaintiff suggests that the exigencies of the modern state require a method of holding defendants who inflict widespread harms accountable to those who bear the centralized costs of those harms. However, the Alabama Supreme Court, our source of guidance in this matter, has never endorsed such a type of action. Although the plaintiff does not want to be bound by Alabama's limited version of intentional interference with contractual relationships, that is what governs in this case.

Alabama law is clear that to sustain a claim of intentional interference with contractual relationships, the interference must be intentional and unjustified. See Baker v. State Farm General Insurance Co., 585 So.2d 804, 808 (Ala. 1991); Chrysler Capital Corp. v. Lavender, 934 F.2nd 290, 294 (11th Cir. 1991). The plaintiff's complaint in no way supports a finding that the defendants acted purposefully to increase the cost of the plaintiff's performance in fulfilling its obligations under its health insurance contracts. The plaintiff does not allege that the defendants knew of the plaintiff's contracts with its beneficiaries or intended to cause their costs to rise. The complaint alleges that the defendants manipulated levels of nicotine in order to addict tobacco users to their products, aggressively marketed highly addictive and harmful products to vulnerable populations such as low income women and minors, and conspired to suppress the development of safer products to avoid implicating existing tobacco products as dangerous. These allegations suggest that the actual motive of the defendants was to increase sales of cigarettes, not to maliciously inflict damage on health care insurers.

The plaintiff puts forth a legal theory unrecognized under Alabama law. The Alabama caselaw discussing the tort of intentional interference with contractual relationships does not lead this

5

court to the conclusion that it should extend the doctrine to permit the UFCW to recover increased medical cost payments to its beneficiaries. As it is not the role of a federal court to expand the scope of state law by creating new common law causes of action, the court declines to adopt the version of intentional interference with contractual relations advocated by the plaintiffs. See Chapman v. American Cynamid Co., 861 F.2d 1515, 1520 (11th Cir. 1988) (declining to adopt the theory of alternative liability for Georgia when Georgia courts had not adopted it); Rhynes v. Branick Manufacturing Corp., 629 F.2d 409, 410 (5th Cir. 1980) (holding that adopting the product line rule of liability for Texas would be "presumptuous"). Therefore, the plaintiff's motion to amend its complaint is due to be denied.

## II. Defendants' Motion To Dismiss

### Fraud and Conspiracy Claims

In its complaint, the plaintiff alleges that the defendants made fraudulent misrepresentations to the general public regarding the safety of their tobacco products. The complaint states that the defendants publically undertook the responsibility of researching the health effects of tobacco use, yet suppressed relevant information about the dangers of their products, concealed the addictive nature of nicotine, and secretly manipulated the levels of nicotine in their products. As evidence, the plaintiff has quoted from internal documents from the tobacco companies suggesting that the defendants knew about the dangers of cigarette smoking and failed to disclose these dangers to the public. The plaintiffs contend that the defendants disseminated public statements questioning the validity of scientific reports on the dangers of smoking and promising to conduct further "independent" research. Instead of following up on their public promises, tobacco research entities

acted as public relations agencies, promoting studies positive to the industry and burying information harmful to it.

Even accepting all of the allegations in the complaint as true, however, the plaintiffs cannot sustain a claim of fraudulent misrepresentation against the defendants. This claim is due to be dismissed because the plaintiff suffered only indirectly from the defendants' promotion and sale of tobacco products.

Under Alabama law, there are four elements to a claim of fraudulent misrepresentation: 1) a misrepresentation of a material fact; 2) made wilfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was justifiably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence. Ala. Code § 6-5-101 (1975); Foremost Insurance Co. v. Parham, 693 So.2d 409, 422 (Ala. 1997). The plaintiff's fraud claim fails because the plaintiff cannot show either reliance on the defendant's misstatements or damage as a proximate consequence thereof.

The plaintiff argues that but for defendants' fraudulent misrepresentations, it "would have acted to help participants and beneficiaries stop using Defendants' unsafe, addictive tobacco products, and to avoid the staggering cost of smoking-related diseases." Plaintiff's First Amended Complaint, 76. The plaintiff does not allege that in the absence of defendants' misrepresentations, it would have known earlier the health risks posed by smoking and would have declined to provide health coverage to smokers. Although the plaintiff's complaint alleges that the UFCW relied on the defendants' public statements, it does not state specifically which statements it relied on:

Defendants intended consumers, including Plaintiff's participants and beneficiaries, to rely on defendants' materially false, incomplete and/or fraudulent statements and representations in deciding whether to begin or continue using tobacco... The public, including Plaintiff's participants and

7

beneficiaries, reasonably relied on Defendants' materially false, incomplete and misleading representations about tobacco, health and addiction in purchasing and using tobacco products as did plaintiff in paying for the resulting health care and treatment of tobacco users. Pl. Compl. ¶ 260.

Primarily, the UFCW asserts that the public, including its beneficiaries and its own officers, relied on the defendants to promulgate health and safety information that could severely reduce the market for their products. Any reliance on these statements would flatly contradict mandatory federal warnings published on tobacco products for the past thirty years. Under Alabama law, it is possible for a plaintiff to sue for fraud based on representations made to another. See Thomas v. Halstead, 605 So.2d 1181, 1184 (Ala. 1992). For a third party to the fraud to maintain a lawsuit requires that the plaintiff be within a class of persons intended to be affected by the misrepresentations. "[I]f the defendant caused the representations to be made, and the public were intended to be thereby induced to act upon them, *and plaintiff was within the class of those so contemplated*, the action for deceit against defendant may be maintained by plaintiff." Id. (quoting Sims v. Tigrett, 158 So. 326, 330 (Ala. 1934) (emphasis added). The plaintiff's factual allegations suggest that the defendant's foremost intentions were to induce consumers to purchase cigarettes, not to cause the UFCW or other health funds to incur increased business costs.

Alabama's law of fraud also requires that the defendants' misrepresentations be the proximate cause of the plaintiff's injury. First Alabama Bank of Montgomery, N.A. v. First State Insurance Co., 899 F.2d 1045, 1076 (11th Cir. 1990). The injury must be "the natural and probable consequence of the negligent act or omission which an ordinary prudent person ought reasonably to foresee would result in injury." Id. (citing Peevy v. Alabama Power Co., 393 So.2d 971, 973 (Ala. 1981).

The plaintiff asserts that the defendants' alleged misrepresentations increased the medical costs it was obligated to pay to beneficiaries with tobacco-related illnesses, and reduced contributions

8

to the funds from beneficiaries who died prematurely or became disabled due to using defendants' products. The costs of tobacco-related injuries to the insured, while indisputably real, are indirect costs of the defendants' alleged fraudulent behavior when borne by an insurer. Such indirect costs cannot be considered a "probable" and foreseeable consequence of defendants' alleged misstatements to the general public.

The Second, Third and Ninth Circuits have found in similar fashion that the injuries asserted by health funds to recoup medical costs are too remote from the actual injury to be actionable. See Laborers Local 17 Health and Benefit Fund v. Philip Morris, 172 F.3d 223,1999 WL 199016, * 8 (2nd Cir. 1999); Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, 1999 WL 167619, *4 (3rd Cir. 1999); Oregon Laborers-Employers Health & Welfare Trust Fund v. Research USA Incorporated, 1999 WL 493306, *4 (9th Cir. 1999). In Steamfitters Local, 1999 WL 167619 at *7, the Third Circuit notes that "even if the tobacco companies had not prevented health care payers from discovering the dangers of smoking, there is no claim that the Funds would have chosen not to insure smokers." Similarly, the UFCW does not make this claim here.

The only damages the plaintiff asserts are the higher medical costs it paid based on injuries of its beneficiaries. The UFCW cannot assert a fraud claim against the defendants based on the injuries to a third party. Although the plaintiff has brought this suit as a direct action, it seeks to assert what is essentially a right of subrogation. It is unclear whether the plaintiff could state a viable subrogation claim in this context; in any case, the plaintiff is now barred from bringing claims against these defendants based on a right of subrogation.[4]

---

[4] At the May 15 1998 hearing, counsel for the plaintiff suggested that the plaintiff may intend to pursue subrogation claims at a later date, if the defendants' motion to dismiss was

9

The plaintiffs claim of conspiracy is also due to be dismissed. A claim of civil conspiracy requires a viable underlying cause of action. See Drill Parts and Service Co. v. Joy Manufacturing Co., 619 So.2d 1280, 1290 (Ala. 1993). Because the underlying claim of fraud is due to be dismissed, the claim of conspiracy must be dismissed as well.

Breach of Special Duty

The plaintiff's complaint alleges negligent or intentional breach of a publicly announced special duty to aid and assist research of tobacco use and health and to provide complete and objective information about tobacco products. The plaintiff asserts that the defendant assumed this special duty, but then breached it by suppressing relevant information about the health effects of tobacco use, the addictive nature of tobacco products, and the possibility of manufacturing safer products. The issue here is whether the defendants assumed a duty to inform the UFCW about the dangers of smoking. Because the defendants' public statements were aimed at purchasers of their products, and not at the purchasers' health insurers, the plaintiff's claim of breach of special duty is due to be dismissed.

Alabama law recognizes that "[a]lthough a party may have no affirmative duty under the law to act in a particular way in relation to another, where a party voluntarily assumes such a duty, it will be charged with performing the duty with reasonable care and may be held liable for injury resulting from a breach of that duty." Martin v. Goodies Distribution, 695 So.2d 1175, 1179 (Ala. 1997). In Goodies Distributors a seven-year-old-boy and his mother sued an ice cream truck company after the

---

granted. This it cannot do, as those claims were not raised here and would be barred by the doctrine of res judicata.

10

boy was struck by a car after purchasing ice cream from a Goodies truck. The plaintiff asserted that Goodies voluntarily assumed a duty to protect young customers from traffic because it required its drivers to sign an "operating procedures" agreement, which included a number of safety precautions to be taken, including "cross all kids under eight years old." Id. at 1178. The Alabama Supreme Court affirmed a grant of summary judgment for Goodies, finding that the list of operating procedures was not sufficient to create a voluntarily-assumed legal duty to protect young patrons from traffic accidents. The plaintiff cites Goodies Distributors for the proposition that if Goodies had advertised that it took safety precautions to protect children in order to increase its ice cream sales, it would have assumed a legal duty to the children and their parents. While Goodies Distributors suggests that the advertising of safety procedures "as a means of increasing business" or actual reliance by the party to whom the duty may be owed may amount to the voluntary assumption of a duty, the plaintiff cannot assert that any "special duty" created by the defendants' advertising extends beyond consumers of tobacco products to their health insurers. See id. at 1179.

In its complaint, the plaintiff refers to "A Frank Statement to Cigarette Smokers," published across the country in January 1954. The Frank Statement promised to aid research of the effects of tobacco use on health by establishing the Tobacco Industry Research Committee, a "joint industry group" headed by a disinterested scientist. In 1964, the TIRC changed its name to Council for Tobacco Research (CTR) and published a statement that "We recognize that we have a special responsibility to the public to help scientists determine the facts about tobacco and health, and about certain diseases that have been associated with tobacco use." Pl. Compl. At 29. The plaintiff alleges that throughout the 1960s and 1970s, the CTR and the Tobacco Institute reaffirmed these statements publically.

11

These advertisements and public statements were aimed at current and future tobacco users, and intended to increase sales of defendants' products. There is no indication from the statements themselves or from the manner of their distribution[5] that the advertisements were intended to mislead the plaintiff and similar health funds into refraining to take steps to mitigate the increased costs of insuring smokers. Any voluntarily-assumed duty created by defendants' public promises to research and inform the public about the dangers of smoking would be owed to the smokers themselves, not to their insurers. The UCFW cannot sustain an action based on the premise that the tobacco companies breached a duty to them. Accordingly, the motion to dismiss is due to be granted as to the plaintiff's claim for breach of a special duty.

## Conclusion

The conditional class certification, granted by the state court, is due to be vacated. For the foregoing reasons, the plaintiff's complaint is due to be dismissed in its entirety, without prejudice to the claims of other putative class members. The plaintiff's motion to amend the complaint is due to be denied.

Dated: *Aug 10*, 1999

Chief Judge Sam C. Pointer, Jr.

---

[5] There is no claim by the plaintiff that the defendants attempted to make the statements specifically to health funds, for example, by dispatching representatives to meet with the health funds, or sending them letters or copies of research data. The only alleged misrepresentations offered by the plaintiff were made to the general public at large. The plaintiff's complaint offers no evidence that it heard the defendants' alleged misrepresentations, let alone relied on them in providing insurance coverage to smokers.

Service list:
    Frederick T. Kuykendall, III
    Sam Heldman
    Roger Doolittle
    Vernon L. Wells, II
    Helen Currie Foster
    Randall D. Quarles
    Robert Huffaker
    Robert B. Reneau
    Frederick G. Helmsing
    John T. Dukes
    Joseph P.H. Babington
    Samuel H. Franklin
    William H. Brooks
    Sterling G. Culpepper, Jr.
    Martin A. Stern
    Robin G. Laurie